## COMMONWEALTH *vs.* SYLVESTER S. FELCH.

Suffolk.   November 21, 1881. — January 4, 1882.

At the trial of an indictment for an attempt to procure the miscarriage of a woman, whereby the woman died, the defendant offered to prove that, a short time before the commission of the alleged offence, the woman told the witness that she was pregnant by a person other than the defendant, and that if this person did not perform an operation to procure a miscarriage, or get some one to do so, she should perform the operation on herself.  It appeared that said declarations neither accompanied nor were explanatory of any act then done by her.  *Held*, that the evidence was hearsay, and inadmissible.

INDICTMENT charging the defendant with an attempt to procure the miscarriage of Mary Ann Finley, on July 2, 1881, at Boston, by the use of some instrument to the jurors unknown ; and that in consequence thereof the said Mary died on the same day.

At the trial in the Superior Court, before *Staples*, J., it was contended by the defendant that the operation was performed by Mary on herself ; and there was evidence tending to show that it would have been possible for her to perform the operation on herself, considered as an operation, using for the purpose an ordinary lead-pencil.

The defendant called one Hughes as a witness, and offered to prove by her that, in the month of June next preceding the time of the alleged offence, Mary told her that she was pregnant by one Edward Titcomb, and that if Titcomb did not perform an operation to procure a miscarriage, or get some one to do so, she should perform the operation on herself with a lead-pencil.  It appeared that said declarations neither accompanied nor were explanatory of any act then done by her.

The judge ruled that the evidence offered was not competent for any purpose, and excluded it.

The jury returned a verdict of guilty ; and the defendant alleged exceptions.

*H. J. Boardman & C. Blodgett*, for the defendant.

*G. Marston*, Attorney General, for the Commonwealth.

LORD, J.  The evidence tendered by the defendant in this case is what is recognized as hearsay evidence.  Such evidence is generally inadmissible.  There are, however, several exceptions

to this rule, and it is contended by the defendant that this evidence may properly be brought within some one of them. The only exception particularly designated is that relating to pedigree. This is indeed one of the well-recognized exceptions · to the general rule. That which is technically hearsay evidence is competent evidence upon a question of pedigree.

It is not easy to see how any question of. pedigree can be involved in this case. Indeed, the defendant's claim is, that the particular fact to which the testimony related was a matter of pedigree. It is not enough that the declarations tendered may relate to some question of pedigree, nor is it enough that a question of pedigree may be relevant and pertinent to the issue. The exception to the inadmissibility of hearsay evidence because it relates to pedigree is only when the question of pedigree is itself in issue. When declarations in relation to pedigree are proved to have been made by a person who might properly make them, it is indispensable that they be made before the question in issue arises. There can be no foundation for the claim in this case that the issue of pedigree is involved. Steph. Ev. *c.* 4, art. 31. *Whittuck* v. *Waters*, 4 C. & P. 375. *Berkeley Peerage case*, 4 Camp. 401.

The fact that the purposes and intentions of the deceased would be, if known, a material aid in coming to a correct conclusion, does not permit such purposes and intentions to be found upon incompetent evidence. Indeed, the more important the fact to be proved is, the more important it is that it be proved by proper evidence. If the fact were established that the defendant and the deceased had made an agreement that the defendant should perform the operation referred to, it would be a most important and material fact, and would have a strong tendency to establish the defendant's guilt. But the same question recurs, How shall such fact be established? Pedigree is as much involved in the desire of the deceased that the defendant should commit the act, as in her desire that Titcomb should commit it, or that she should do it herself. Perhaps in this may be found a satisfactory test of the competency of the testimony. If the government had called Hughes, and offered to prove by her that the deceased had told her in June that she was pregnant by the defendant, and he had

agreed to perform the operation, would it be contended that the fact thus offered to be established could be proved by that evidence?

There is no claim that the evidence is admissible under any other specific exception to the rule excluding hearsay. There is no pretence that it was a dying declaration, so as to make it necessary to consider the principles upon which such declarations are admissible. It accompanied no act. It gave character to no transaction. There existed no one of the circumstances which sometimes in law are deemed a sanction equivalent to the ordinary sanction of an oath. It is mere recital. The only apparent objection to the rejection of the evidence is this: the fact, if true, is an important fact; the deceased knew whether it was true or not; being now dead, she cannot speak; in her lifetime she said it was true.

The same suggestions may be made in reference to every fact, material to any issue afterward tried, known to any person deceased at the time of the trial; and this alone is sufficient to establish the wisdom of the rule.          *Exceptions overruled.*