83 S.E.2d 656 (1954)
240 N.C. 631
STATE
v.
Frank E. SMITH.
No. 1.
Supreme Court of North Carolina.
September 29, 1954.
Harry McMullan, Atty. Gen., Ralph Moody, Asst. Atty. Gen., Charles G. Powell, Jr., Raleigh, for the State.
W. Brantley Womble, Raleigh, for defendant, appellant.
PARKER, Justice.
The defendant's assignments of error, except those that are formal, relate to the argument of the Solicitor for the State to the jury. The part of his argument assigned as error is as follows: "1. Officer Norwood and Sheriff Harrison are personally known to all of you for years, whereas this stranger from Texas is an unknown. Therefore, *657 you have no choice but to take the word of the local officers against his.
"2. Just because he is a man of property, can afford an expensive Lincoln car is no reason why he can come through here and break our laws. The rest of us are not blessed with wealth and have to be satisfied with the simple things of life.
"3. Just because he drives a Lincoln car 1,000 miles a week and covers seven states is no reason why he can come through Yanceyville criticizing our roads and saying they are narrow and full of curves. These roads are good enough for the rest of us. If he doesn't like them, let him stay out of here and go back to Texas where he belongs. We have to be satisfied with the meagre possessions we have. I dare say not one of us here owns a Lincoln car.
"4. Just because he is a man of property and can afford a Lincoln car, are you going to allow him to drive through here and run down your little daughter or your little son, or yours, or yours? I say `No.' You must find him guilty.
"5. And as for his having a sealed bottle of whiskey in his car, thus claiming that he hadn't been drinking, I ask you to ignore this apparently innocent unopened bottle of whiskey. This man of property, in order to delude police, can afford to buy two bottles, take a few swigs out of one and then throw it awaykeeping the sealed bottle conspicuously in the car to prove he hasn't touched it. Having unlimited means, he will stop further up the road, buy another bottle, have a few swigs out of it, and throw this away too. With his means, he can do this repeatedly and ignore the expense, thus drinking himself into such a condition that he is no longer fit to drivebut still having the sealed bottle there in the car as a decoy to the arresting officer.
"6. This business of having power steering and automatic headlight dimmers luxuries that you gentlemen can't afford on your carsis no license for him to come through our community breaking our laws."
The evidence for the State tends to show that the defendant is a travelling salesman living in Raleigh, to which place he came from Texas. In the car with him were two ladies, neither of whom was drinking. The patrolman found in the car a pint of ABC whiskey with unbroken seal, and testified there was no evidence that drinking had been going on in the car.
There is no evidence in the record that the defendant was a man of wealth having unlimited means, as argued by the solicitor. The fact that he was driving a Lincoln car permits no such inference.
The record shows that the defendant excepted to the solicitor's remarks, but it does not show when the exception was made. Upon inquiry by this Court upon the oral argument as to when the exception was made, defendant's counsel replied that it was entered after the verdict of guilty, when he made a motion that the verdict be set aside on the ground that the argument of the solicitor was prejudicial, and then moved that the court set aside the verdict in its discretion.
The court made this reply to the motion of the defendant to set the verdict aside: "I am not going to set it aside. I tried to charge the jury and impress on them that it is their duty to give a man from Texas as fair a trial as a man from North Carolina or another county in the State; and to give a man of means as fair a trial as a man of no means. It is a question of fact." That in substance is all the court charged the jury in respect to the improper remarks of the solicitor. Nowhere in the charge did the court charge the jury that the remarks of the solicitor were improper, grossly unfair and highly prejudicial, and that the jury should disregard such remarks. Nowhere in the charge did the court instruct the jury that there was no evidence that the defendant was a man of wealth possessed of unlimited means, and that the jury should disregard such remarks. On the contrary, it would seem that the court emphasized the solicitor's remarks that the defendant was a man of wealth. The court's reply to the motion of the defendant to set the verdict aside and its attempt in its charge to correct the baneful effect of the remarks of the solicitor *658 make it manifest that the court heard the improper remarks, or at least it was brought to its attention before it delivered the charge to the jury.
We have held in a long line of decisions that exception to improper remarks of counsel during the argument must be taken before verdict. State v. Suggs, 89 N.C. 527; State v. Tyson, 133 N.C. 692, 45 S.E. 838; State v. Steele, 190 N.C. 506, 130 S.E. 308; State v. Hawley, 229 N.C. 167, 48 S.E.2d 35. The rationale for this rule, which has been frequently quoted in our decision, is thus stated in Knight v. Houghtalling, 85 N.C. 17: "A party cannot be allowed * * * to speculate upon his chances for a verdict, and then complain because counsel were not arrested in their comments upon the case. Such exceptions, like those to the admission of incompetent evidence, must be made in apt time, or else be lost."
We have modified this general rule in recent years so that it does not apply to death cases, when the argument of counsel is so prejudicial to the defendant that in this Court's opinion, it is doubted that the prejudicial effect of such argument could have been removed from the jurors' minds by any instruction the trial judge might have given. State v. Little, 228 N.C. 417, 45 S.E.2d 542; State v. Hawley, supra; State v. Dockery, 238 N.C. 222, 77 S.E.2d 664.
In respect to the general rule we said in State v. Davenport, 156 N.C. 596, at page 612, 72 S.E. 7, 14: "In the passage taken from State v. Tyson we did not intend to decide that a failure of the judge to act immediately would be ground for a reversal, (unless the abuse of privilege is so great as to call for immediate action) but merely that it must be left to the sound discretion of the court as to when is the proper time to interfere, but he must correct the abuse at some time, if requested to do so, and it is better that he do so even without a request, for he is not a mere moderator, the chairman of a meeting, but the judge appointed by the law to so control the trial and direct the course of justice that no harm can come to either party, save in the judgment of the law, founded upon the facts, and not in the least upon passion or prejudice. Counsel should be properly curbed, if necessary, to accomplish this resultthe end and purpose of all law being to do justice." (Italics ours.)
We have also held in many cases that where the remarks of counsel are improper in themselves, or are not warranted by the evidence, and are calculated to mislead or prejudice the jury, it is the duty of the court upon objection to such remarks to interfere. State v. O'Neal, 29 N.C. 251; Melvin v. Easley, 46 N.C. 386 (no exception was made to improper argument of the plaintiff's counsel as to statements in a book he held in his hand, which was not in evidence and not admissible; the court did not correct the mistake at the time nor in its charge; on the contrary the court decided the book was admissible in evidence, and charged the jury upon it as evidence; a venire de novo was ordered); Jenkins v. North Carolina Ore Co., 65 N.C. 563; McLamb v. Wilmington & W. R. R., 122 N.C. 862, 29 S.E. 894; Perry v. Western N. C. R. R. Co., 128 N.C. 471, 39 S.E. 27; State v. Davenport, supra; State v. Tucker, 190 N.C. 708, 130 S.E. 720; State v. Howley, 220 N.C. 113, 16 S.E.2d 705; State v. Little, supra; State v. Hawley, supra; State v. Bowen, 230 N.C. 710, 55 S.E.2d 466.
Ordinarily the court may correct improper argument at the time or when it comes to charge the jury. State v. O'Neal, supra; Melvin v. Easley, supra; McLamb v. Wilmington & W. R. R., supra; State v. Little, supra. If the impropriety be gross, it is the duty of the court to interfere at once. Jenkins v. North Carolina Ore Co., supra; State v. Tucker, supra.
It is especially proper for the court to intervene and exercise the power to curb improper argument of the solicitor when the State is prosecuting one of its citizens, and should not allow the jury to be unfairly prejudiced against him. State v. Williams, 65 N.C. 505. Every defendant should be made to feel that the solicitor is not his enemy, and that he is being treated fairly. State v. Smith, 125 N.C. 615, 34 S.E. 235; State v. Tucker, supra.
*659 Counsel have wide latitude in making their arguments to the jury. State v. O'Neal, supra; McLamb v. Wilmington & W. R. R., supra; State v. Little, supra. However, it is the duty of the judge to interfere when the remarks of counsel are not warranted by the evidence, and are calculated to mislead or prejudice the jury. McLamb v. Wilmington & W. R. R., supra; Perry v. Western N. C. R. R. Co., supra; State v. Howley, supra. "Courts should be very careful to safeguard the rights of litigants and to be as nearly sure as possible that each party shall stand before the jury, on equal terms with his adversary, and not be hampered, in the prosecution or defense of his cause by extraneous considerations which militate against a fair hearing." Starr v. Southern Cotton Oil Co., 165 N.C. 587, 81 S.E. 776, 779.
The remarks of the solicitor in his argument were grossly unfair and well calculated to mislead and prejudice the jury. Counsel for the defendant should have objected to these improper remarks as soon as they were begun, and before they were elaborated in detail. If verdicts cannot be won without appealing to prejudice, they ought not to be won at all. We can see how the vigorous solicitor in the heat of debate made these improper remarks without conscious intent to mislead and prejudice the jury, but coming from him in his exalted place with the high respect that he has earned for himself in his district, such remarks were disastrous to the defendant's right to a fair and impartial trial.
Advertent to what this Court had said in State v. Davenport, supra, quoted above, the able and experienced trial judge, out of his inherent sense of fairness, attempted to remove from the minds of the jury the prejudicial effect of the improper remarks of the solicitor without a request from defendant's counsel. Doubtless, he thought he had done so, but we sitting here in calm review are of opinion that he did not do so.
The defendant's assignments of error are not sustained, because not made in apt time.
However, this Court is vested with authority to supervise and control the proceedings of the inferior courts. N. C. Constitution, Art. IV, Sec. 8; State v. Cochran, 230 N.C. 523, 53 S.E.2d 663. This Court has exercised this power very sparingly, and rightly so.
Under the facts of this case, we are of opinion, and so hold, that to sustain this trial below would be a manifest injustice to the defendant's right to a fair and impartial trial. Acting under the supervisory power granted to us by the State Constitution, a new trial is ordered to the end that the defendant may be tried before another jury, where passion and prejudice and facts not in evidence may have no part.
New trial.
HIGGENS, Justice (concurring in dissent).
Conceding the remarks of the solicitor were improper and prejudicial, yet under the decisions of this Court in similar cases, I think the objection after verdict came too late. For that reason, I concur in the dissenting opinion of Justice BOBBITT.
BOBBITT, Justice (dissenting).
The State's evidence consisted of the testimony of a State Highway Patrolman, a deputy sheriff and the sheriff. The patrolman and the deputy sheriff observed the defendant while he was driving and when he was arrested and taken to jail. The sheriff observed him later when he was released from jail after furnishing bond. All were of the opinion that he was under the influence of some intoxicant.
The testimony of the State's witnesses, if accepted as worthy of belief, was fully sufficient to support a conviction. The testimony of the defendant, and of one of the two ladies riding with him on the occasion of his arrest, if accepted as credible, exonerated the defendant. It was a case for the jury. The defendant does not contend otherwise.
Upon the jury's return of a verdict of guilty, the defendant moved that the verdict be set aside on the ground "that the argument *660 of the Solicitor was prejudicial." The exceptive assignments of error are to the refusal of the trial judge to set aside the verdict and to the judgment pronounced, namely, that the defendant pay a fine of $100 and the costs.
To appreciate the evidential background for the solicitor's address to the jury, the following portions of the evidence should be noted.
All the evidence tended to show that the defendant was operating a Lincoln car. A State's witness identified the car as a 1954 four-door Lincoln. The defendant's testimony was that he had purchased it the previous week, that it had automatic, power steering, and that he was unfamiliar with it. He further testified that he traveled out of Raleigh, covering seven southern states and driving about four thousand miles a month.
The State's evidence tended to show that the defendant stated on the occasion of his arrest that he had recently been transferred from Texas to Raleigh. The State's evidence also tended to show that defendant's car bore a North Carolina license tag and that defendant had and produced a Texas operator's license.
The defendant explained the State's evidence to the effect that he failed to dim his bright lights when the approaching patrol car's lights were blinked several times, by his testimony that the car he had been driving was equipped with automatic dimmers and that he "could have forgotten" the fact that it was necessary to press a button to dim the bright lights on his recently acquired Lincoln car.
The defendant explained the State's evidence to the effect that he was operating his car back and forth from the edge of the pavement to a foot or so across the center line, by his testimony as follows: "The type of road I came down with respect to curves and the type of road, seems like it's all hairpin curves and up and down hill and very narrow. As I said, I drive about four thousand miles a month and have never seen one like the one out here for the next ten miles."
All the evidence tends to show that there was a pint of ABC whiskey in defendant's car, the seal unbroken.
Defendant's testimony tended to show that he and the two ladies were driving from Raleigh to Reidsville, where they were to meet a man from his company arriving by train from Lynchburg; that he had drunk no whiskey; that he had a bottle of beer at a drive-in as they left Raleigh; and that farther along the way he stopped again and had a cheese sandwich and another bottle of beer.
In the record, under the caption, "Prosecutor's Summation To Jury," there are six numbered paragraphs, each setting forth an excerpt from the solicitor's address to the jury. While the record imports verity, attention is called to the fact that the prosecutor's summation is not given in its entirety and so does not disclose the context of the solicitor's challenged remarks. It seems only fair to infer that these remarks were in some degree if not wholly in reply to the preceding (undisclosed to us) arguments by defense counsel.
An advocate, in addressing the jury, has the right, and indeed it is his function, to analyze the evidence and present every inference and every deduction tending to support his contention as to the facts established thereby. Where, as here, the testimony of the State's witnesses and that of the defense witnesses cannot be reconciled because in direct conflict, so that the jury's task is largely one of determining the credibility or non-credibility of each witness, the advocate's rightful sphere of argument includes his contention as to each circumstance relevant to such determination reasonably arising from a consideration of the evidence before the jury.
While many, if not all, of the solicitor's challenged remarks have their roots in evidence before the court, I agree that the detached excerpts set forth in the record are objectionable as an appeal to prejudice in their emphasis upon the fact that the defendant was a stranger in the community and in the contention that he was a man of means.
*661 But when an improper argument is being made, the rule is that counsel must object so that the presiding judge can call a halt to the continuance thereof. There are at least two underlying reasons for this well-established rule. First, there can be no question then as to the content and context of the objectionable statements. Second, the presiding judge, then and there, can stop such argument and promptly instruct the jury to disregard it and, equally important, caution and instruct the advocate to pursue the argument no further.
An unfair argument may and frequently does cause a jury to react unfavorably to the advocate's cause. Of course, the trial judge may take the initiative, if he hears the argument and considers it a manifest abuse of privilege, by then intervening and instructing the jury and the advocate with reference thereto. But ordinarily the trial judge will leave it to counsel for the opposing litigant to determine whether he desires that the court intervene or whether he prefers to rely upon the good sense and judgment of the jury either to disregard it entirely as irrelevant or to reject it as unfair.
Here, the defendant was represented by a trial attorney of long experience. He did not see fit to object. at any time during the solicitor's argument. The first objection was made after verdict.
Although defense counsel interposed no objection, the presiding judge, in his charge to the jury, gave the instructions set out below.
Near the first of his charge, this instruction was given:
"You are not concerned about what kind of car a man drives; the fact that a man drives a Lincoln automobile does not deprive him of the same rights and privileges of a man driving a Ford; and, the fact that a man drives a Ford, does not deprive him of the same rights and privileges of a man driving a Lincoln automobile. You are not to be concerned about, and I'm sure that you will not even consider what kind of a car the defendant was driving. The only question is: Has the State satisfied you from the testimony and beyond a reasonable doubt of his guilt? If so, it is your duty to convict him; if not, it is equally your duty to acquit him."
In concluding his charge, these instructions were given:
"It all revolves itself into purely a question of fact for you to determine, you being the sole triers of the facts. It is your duty to give a gentleman not living in this county and coming into the State from Texas to live the same fair, just, and impartial trial that you would expect for yourselves or some member of your family if tried here or in another countyto be treated as fairly as anybody else without regard to where he came from or regard to his property or lack of property; the only thing you are concerned about is to find the truth and speak the truth and let it please whom it will.
"If you find beyond a reasonable doubt that the defendant was under the influence of liquor at the time he was arrested by the State Highway Patrolman, Mr. Norwood, and that he was operating his automobile at that time, it is your duty to find him guilty. If you have a reasonable doubt about it, give him the benefit of that doubt and find him not guilty."
In my opinion, the quoted instructions were entirely satisfactory. Defense counsel evidently thought so for he made no request for additional instructions. Had he done so, the trial judge could have instructed the jury further relative to features to which attention was directed. Moreover, no exception to the sufficiency of these instructions was taken and error is not assigned on account of any insufficiency thereof.
It is pointed out in the opinion of the Court that the trial judge did not at any time tell the jury to disregard the challenged excerpts from the solicitor's address to the jury. In my view, it was better to instruct the jury as was done, directing attention to the single issue for decision and instructing the jury that whether the man was from Texas or North *662 Carolina or a man of means or one without means should have no part in their decision. I think the trial judge handled the matter in excellent manner. The alternative would have been a repetition of the objectionable statements and contentions of the solicitor coupled with an instruction that they were improper and therefore should be disregarded by the jury in its deliberations. The repetition of the objectionable excerpts for the purpose of eliminating them from consideration might well have emphasized rather than eliminated the prejudicial effect, if any, they may have had.
Except in capital cases, under the rule established in State v. Tyson, 133 N.C. 692, 45 S.E. 838, which overruled earlier cases in conflict therewith, a defendant, when represented by counsel, cannot sit by, interpose no objection or motion for mistrial, take his chances with the jury, and then, after verdict, complain for the first time that portions of the solicitor's argument constituted a prejudicial abuse of privilege for which he is entitled to a new trial.
With the law as stated in the opinion of. the Court, I am in accord. Further, I do not question the authority of this Court, in the exercise of its general supervisory jurisdiction over trials in the Superior Court, to award a new trial when manifest injustice has been done even though settled rules of law as established by the decisions of this Court must be set aside in order to do so. The basis of my dissent is my opinion that this record does not present a situation that justifies the exercise of such authority.
Justice is always the goal. Yet experience has demonstrated that we can best approximate the ideal by the observance of orderly procedure.
My apprehension is that counsel, instead of being alert to object in apt time as required under our decisions, will deem it prudent to remain silent when an alleged prejudicial argument is being made, take their chances with the jury then empanelled; and then, after conviction, bring before us the solicitor's address to the jury or excerpts therefrom for close inspection against an ideal standard in the hope that we will in such case see fit to exercise the general supervisory powers of this Court by awarding a new trial on the basis of an alleged abuse of privilege that could have been fully and effectively corrected if objection had been interposed in apt time.
When the trial judge was considering defendant's motion to set aside the verdict, the record shows the following remarks:
"Court: I'm not going to set it aside; I tried to charge the jury and impress on them that it is their duty to give a man from Texas as fair a trial as a man from North Carolina or another county in the state; and to give a man of means as fair a trial as a man of no, means, it's a question of fact."
If this can be fairly interpreted as a statement by the trial judge that the defendant was a man of means, the complete answer is that this remark, made after verdict, could have had no effect on the jury's deliberations.
For the reasons stated, I vote to affirm.
JOHNSON, J., concurs in this dissent.